Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 03 C 1519 | DATE | December 2, 2003 |
| CASE TITLE | Wilton Partners v Tim Gallagher | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due ___ ___.
(3) ☐ Answer brief to motion due___ ___. Reply to answer brief due___ ___.
(4) ☐ Hearing
(5) ☐ Status hearing re-set to 1/21/04, at 9:00 a.m.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on ___ set for ___ at ___.
(7) ☐ Trial[set for/re-set for] on ___ at ___.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to ___ at ___.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
 ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Memorandum opinion and order entered. Accordingly, counts VI and VII are dismissed as to the Wilton Companies and Scott Mayer, and Count IV is dismissed with leave to replead. The motions to dismiss counts II, III and VC are denied. Amended counterclaim and third party complaint are due by 12/29/03. Counter and third party defendants' responses are due by 1/19/04.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| X | Notices mailed by judge's staff. | | DEC 0 5 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | 92 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT CLERK | | |
| GDS | courtroom deputy's initials | 03 DEC -4 PM 3:52 | date mailed notice | |
| | | Date/time received in central Clerk's Office FILED | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

WILTON PARTNERS III LLC, a Delaware limited )
liability company, and WILTON DEVELOPMENT )
CORP., a Delaware corporation, )
                                                                         Plaintiffs, )
                                                                         )    No.   03 C 1519
                 v. )
                                                                         )    Judge Robert W. Gettleman

TIM GALLAGHER, an individual, PATRICIA )
KELLY, an individual, FIRST EQUITY )
PROPERTY, INC., an Illinois corporation, NEIL )
COTHERMAN, an individual, THE NETMEDICS )
GROUP, JOHN DOES 1-10 and ABC-XYZ )
CORPORATIONS, )
                                Defendants. )

TIM GALLAGHER, an individual, and FIRST )
EQUITY PROPERTY, INC., an Illinois )
corporation, )
                              Counter-Plaintiffs, )
               v. )

JAY WILTON, an individual, WILTON )
PARTNERS III, LLC, a Delaware limited liability )
company, WILTON DEVELOPMENT CORP., )
a Delaware corporation, and SCOTT MAYER, )
Esq., )
                           Counter-Defendants, )
                           Third Party Defendants. )

**MEMORANDUM OPINION AND ORDER**

     Plaintiffs Wilton Partners III LLC and Wilton Development Corp. (collectively, the "Wilton Companies") filed a ten-count second amended complaint against five defendants, including Tim

Gallagher and his company, First Equity Property, Inc. ("FEPC"), alleging interference with plaintiffs' real estate business. Gallagher and FEPC in turn filed an eight-count amended counterclaim and third-party complaint asserting the following claims: civil conspiracy, tortious interference with prospective economic advantage, defamation per se, breach of fiduciary duty, accounting and conversion against the Wilton Companies, Jay Wilton and Scott Mayer (Counts I, II, IV, VI, VII, and VIII); breach of oral contract against Jay Wilton (Count III); and unjust enrichment against Jay Wilton (Count V).

On August 4, 2003, the Wilton Companies filed a motion to dismiss Counts II, IV, VI, and VII of the amended counterclaim and third party-complaint pursuant to Fed. R. Civ. P. 12(b)(6). On October 22, 2003, third party defendants Jay Wilton and Scott Mayer filed a separate motion to dismiss Counts II, III, IV, V, VI, and VII of the amended counterclaim and third party complaint pursuant to Fed. R. Civ. P. 12(b)(6), which also incorporated the Wilton Companies' arguments in support of their motion to dismiss. For the reasons stated below, Counts VI and VII are dismissed as to the Wilton Companies and Scott Mayer, and Count IV is dismissed with leave to replead. The motions to dismiss Counts II, III, and V are denied in their entirety.

## FACTS

In Count I of their amended counterclaim and third party complaint, Gallagher and FEPC (collectively, "Gallagher")[1] allege that the Wilton Companies and two of their officers, Scott Mayer and Jay Wilton, entered into an agreement to destroy Gallagher's real estate development business.

---

[1] The court recognizes the potential confusion arising from defining Gallagher to include both Tim Gallagher and FEPC, rather than distinguishing between Tim Gallagher (the individual) and his company. Nonetheless, because the amended counterclaim and third party complaint treats them collectively, the court will do so as well.

Specifically, Gallagher alleges that they: (1) filed a baseless lawsuit against Gallagher; (2) communicated with Gallagher's potential clients and the media to defame Gallagher's business reputation; (3) asserted to third parties that they maintain an interest in potential projects bid on by Gallagher; (4) misrepresented their interest in Gallagher projects so as to interfere with Gallagher's prospective economic advantage; and (5) wrongfully misappropriated and converted confidential and proprietary information belonging to Gallagher. The details of these allegations are more fully developed in the remaining six counts of Gallagher's amended counterclaim and third party complaint.

In Count II, for example, Gallagher asserts a claim of tortious interference with prospective business advantage. According to Gallagher, in 2002, the Village of Arlington Heights (the "Village") issued a request for qualification/proposal for the redevelopment of property at Golf Road and Arlington Heights Road. Gallagher alleges that he submitted a proposal and was the "preferred developer," and thus possessed a reasonable business expectation of entering into a valid business relationship with the Village.

Gallagher further alleges that although the Wilton Companies did not make a proposal to the Village, counter- and third party defendants nonetheless purposely asserted an interest in Gallagher's proposal and involved the Village in litigation before this court - for example, by issuing a subpoena to the Village - for the sole purpose of interfering with Gallagher's business relationship with the Village. According to the amended counterclaim and third party complaint, the Village ultimately awarded the Arlington Heights project to the second highest scoring proposal rather than Gallagher because the selection committee was "concerned about Wilton's claimed interest in the Arlington Heights Proposal and how the lawsuit filed against Gallagher would or could effect [sic] the project."

3

Gallagher alleges that counter- and third party defendants' knowledge of Gallagher's proposal came from proprietary information that they stole from his computers.

The amended counterclaim and third party complaint also alleges that in June 1998, Gallagher entered into a Memorandum of Understanding with Wilton Acquisitions Corp. ("WAC"), under which Gallagher agreed to pursue certain types of real estate development projects for WAC and its affiliated entities. Of all the projects allegedly presented by Gallagher, Jay Wilton elected to pursue those involving the development of stores for CVS Corporation ("CVS").

Although the Memorandum of Understanding expired by its own terms in May of 1999 and was not renewed, Gallagher, Jay Wilton, and the companies that Jay Wilton controls allegedly orally agreed to continue building CVS stores "for so long as CVS would continue to utilize the services of Jay Wilton." Gallagher alleges that Jay Wilton was to pay him 40% of the profits derived from all CVS transactions pursuant to their oral agreement (the "CVS agreement"). According to Gallagher, between 1998 and 2000, Jay Wilton and Gallagher closed on approximately 30 stores, through which Jay Wilton received in excess of $6,000,000. Gallagher alleges that Jay Wilton has not paid him the sums due under the CVS agreement.

On the basis of these allegations relating to the CVS agreement, Gallagher asserts a breach of oral contract claim against Jay Wilton (Count III) and, in the alternative, an unjust enrichment claim against Jay Wilton (Count V). Gallagher further alleges that the Wilton Companies, Jay Wilton, and Scott Mayer breached their fiduciary duties to Gallagher by receiving and retaining sums paid by CVS and failing to both account for and pay to Gallagher those sums that "they knew and continue to know belong to Gallagher" (Count VI). In Count VII, Gallagher seeks an accounting of those sums paid by CVS to counter- and third party defendants.

4

In Count IV for defamation per se, Gallagher also alleges that counter- and third party defendants "knowingly and intentionally made false statements about Tim Gallagher and FEPC" to third parties, including, but not limited to, CVS Corporation, the Village of Arlington Heights, CB Richard Ellis, Trapani Companies, Leonardo Companies, Jos. Freed Associates, and Corrigan and Clark. According to the amended counterclaim and third party complaint:

> Among other things, [counter- and third party defendants] advised one or more of the above-referenced entities that Gallagher and FEPC were engaged in illegal or wrongful conduct; misappropriated or stole information belonging to Wilton; misrepresented themselves in proposals to one or more of the above-referenced entities or were otherwise lacking in business integrity.

Gallagher alleges that these statements were made orally - "telephonically and possibly in person" - by defendants and through their representatives, and in writing by the filing of the underlying lawsuit in the instant case.

Last, in Count VIII for conversion, Gallagher alleges that counter- and third party defendants locked him out of the office where he was keeping a refrigerator, office furniture, television, computer equipment and other property. Gallagher alleges that this property remains under their control, that they have no title, right or interest in this property, and that they have refused his repeated requests to have these items returned.

## DISCUSSION

The Wilton Companies, Jay Wilton, and Scott Mayer have moved pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss Gallagher's claims against them. In considering a Rule 12(b)(6) motion, the court is obligated to accept all well-pleaded facts in the counterclaim as true and draw all reasonable inferences in favor of the non-moving party. Northern Trust Co. v. Peters, 69 F. 3d 123, 129 (7th Cir. 1995). The consideration of a Rule 12(b)(6) motion is generally restricted to the pleadings,

5

which include the complaint, any exhibits attached thereto, and supporting briefs. Thompson v. Illinois Department of Professional Regulation, 300 F.3d 750, 753 (7th Cir. 2002).

i.   Count II: Tortious Interference with Prospective Business Advantage

Counter- and third party defendants moved to dismiss Count II, arguing that: (1) the Wilton parties cannot be liable for tortious interference as a result of filing and then litigating the instant lawsuit; (2) Gallagher has not identified any third party with whom he had a reasonable expectation of entering into a business relationship; and (3) Gallagher failed to allege the existence and nature of any reasonable business expectancy, or counter- and third party defendants' knowledge thereof. Although the court agrees that counter- and third party defendants' litigation-related activities, such as the serving of subpoenas, cannot support a cause of action for tortious interference, Gallagher's remaining allegations of interference unrelated to the instant lawsuit are sufficient to state a claim under Illinois law.

Under Illinois law, the elements of tortious interference with prospective economic advantage are that: (1) the plaintiff had a reasonable expectation of entering into a valid business relationship; (2) the defendant knew of this expectancy; (3) the defendant intentionally and unjustifiedly interfered to prevent the expectancy from being fulfilled; and (4) damages to the plaintiff resulted from the interference. Fredrick v. Simmons Airlines, Inc., 144 F.3d 500, 502 (7th Cir. 1998).

Counter and third party defendants correctly point out, and Gallagher does not dispute, that "under Illinois law, the only cause of action recognized for the wrongful filing of a lawsuit is one for malicious prosecution or abuse of process." Havoco of America, Ltd. v. Hollobow, 702 F.2d 643, 647 (7th Cir. 1983). Further, Illinois law recognizes an absolute litigation privilege which protects "anything said or written in the course of a legal proceeding," so long as the communication at issue

6

pertains to the pending litigation. Steffes v. Stepan Co., No. 96 C 8225, 1997 WL 305306, at *4 (N.D.Ill. May 30, 1997) (citations omitted). "The purpose of the privilege is to secure to attorneys as officers of the court the utmost freedom in their efforts to secure justice for their clients." Libco Corp. v. Adams, 100 Ill. App. 3d 314, 317 (1st Dist. 1981). Accordingly, the filing of the instant suit, and the subpoena served upon the Village in relation to that suit, do not support a cause of action for tortious interference.

Apparently recognizing this, Gallagher's amended counterclaim and third party complaint alleges that, in addition to involving the Village in litigation before this court, counter- and third party defendants "assert[ed] to third parties that Wilton legally maintains an interest in potential projects bid on by Gallagher" and "misrepresented Wilton's interest in Gallagher projects so as to interfere with Gallagher's prospective economic advantage from its business relations." Specifically, Gallagher identifies the Arlington Heights project as one particular venture for which Gallagher was the "preferred developer," and alleges that he lost the project to another developer after counter- and third party defendants "asserted an interest in [Gallagher's] Arlington Heights proposal and involved the [Village] in litigation before the court...." Gallagher also alleges that counter- and third party defendants learned of Gallagher's proposal to the Village through misappropriating information on his computer.

Although Gallagher fails to identify the contours of counter- and third party defendants' alleged "interest" in his proposal, and does not describe how they allegedly conveyed their purported interest in Gallagher's proposal to the Village, these allegations are minimally sufficient, at the pleading stage of the case, to state a claim for tortious interference with prospective business advantage. See Cook v. Winfrey, 141 F.3d 322, 328 (7th Cir. 1998) (allegation that defendant

7

improperly interfered with plaintiff's "ability to enter into contracts or business relationships with third parties interested in purchasing the rights to publication of his experiences" was sufficient to state a claim for tortious interference with prospective economic advantage); Shah v. National Association of Securities Dealers, No. 98 C 5355, 1999 WL 240342, at *3 (N.D.Ill. April 9, 1999) (quoting Sanjuan v. American Board of Psychiatry and Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994)) (allegations of tortious interference sufficient to state a claim in the absence of supporting facts because "matching facts against legal elements comes later"). Counter- and third party defendants' Rule 12(b)(6) motion to dismiss Count II is therefore denied.

2. Count IV: Defamation Per Se

Counter- and third party defendants maintain that Count IV must be dismissed because the allegations contained therein are too vague to support a cause of action for defamation per se. Specifically, they argue that Gallagher fails to set forth what the alleged statements were, who made them, and to whom they were made. Counter- and third party defendants further assert that the statements are capable of innocent construction and thus are not actionable. In response, Gallagher argues that his allegations of defamation are sufficiently detailed to state a claim and are not capable of innocent construction.

Under Illinois law, "[a] statement is defamatory if it tends to cause such harm to the reputation of another in that it lowers that person in the eyes of the community or deters third persons from associating with him or her." Dunlap v. Alcuin Montessori School, 298 Ill. App. 3d 329, 338 (1st Dist. 1998). A plaintiff may recover for defamation per se where the allegedly defamatory statements fit into one of the following categories of statements: (1) those imputing the commission of a criminal offense; (2) those imputing infection with a communicable disease which, if true,

8

would tend to exclude one from society; (3) those imputing an inability to perform or want of integrity in the discharge of duties of office or employment; (4) those stating false accusations of fornication or adultery; or (5) those that prejudice a party in her trade or profession. Id.

Even when a statement fits into one of the five categories of defamation per se, recovery is precluded if the statement reasonably can be given an innocent construction. Anderson v. Vanden Dorpel, 172 Ill.2d 399 (Ill. 1996). "The innocent construction rule requires the court to interpret the alleged defamation in context and give the words their natural and obvious implications and meanings." Skolnick v. Correctional Medical Services, Inc., 132 F. Supp. 2d 1116, 1123 (N.D.Ill. 2001).

Numerous courts in this district have applied a haec verba pleading requirement in defamation actions under which a complainant must set forth the alleged defamatory words that were spoken or published. See, e.g., Cozzi v. Pepsi-Cola General Bottlers, Inc., No. 96 C 7228, 1997 WL 312048, at *5 (N.D.Ill. June 6, 1997); Silk v. City of Chicago, No. 95 C 0143, 1996 WL 312074 (N.D.Ill. June 7, 1996). "The rationale of the [haec verba] requirement is that 'general knowledge of the exact language used is necessary to form a responsive pleading.'" Cozzi, 1997 WL 312048, at *5 (quoting Vantassell-Matin v. Nelson, 741 F. Supp. 698, 707 (N.D.Ill. 1990)). Courts applying this requirement, however, have held that the defamatory language need not be quoted verbatim. Id. Rather, an allegation is sufficiently specific if it allows the defendant to understand the nature of the claim and form a responsive pleading. Socorro v. IMI Data Search, Inc., No. 02 C 8120, 2003 WL 1964269, at *3 (N.D.Ill. April 28, 2003) (citing Wynne v. Stevenson, No. 02 C 5263, 2002 WL 31804497, at *2 (N.D.Ill. Dec. 13, 2002)).

9

Without greater detail regarding the alleged defamatory statements, the court is unable to determine the precise context in which the alleged statements were made and whether they are indeed capable of innocent construction. Accordingly, Gallagher is directed to amend Count IV to allege more precisely the content of the allegedly defamatory statements,[2] the context in which those statements were made, as well as the identities of both the speakers and the individuals to whom the statements were allegedly made.

3. Count III: Breach of Oral Contract (against Jay Wilton)

Jay Wilton has moved to dismiss Count III, arguing that, (1) Gallagher made judicial admissions in his motion to dismiss plaintiff's complaint that contradict the allegations in Count III of his amended counterclaim and third party complaint, and (2) the oral contract at issue in Count III, the CVS agreement, falls within the statute of frauds and thus had to be in writing in order to be enforceable. For the reasons discussed below, the court finds neither of these arguments has merit.

A judicial admission is "a deliberate, clear, and unequivocal statement, either written or oral, made in the course of judicial proceedings, pleadings, or stipulations, that is binding upon the party making it." Chow v. Aegis Mortgage Corp., 185 F. Supp. 2d 914, 916 (N.D.Ill. 2002) (internal quotations and citations omitted). See also Medcom Holding Co. v. Baxter Travenol Labs., Inc., 106 F.3d 1388, 1404 (7th Cir. 1997). A representation in a brief, although neither in a pleading nor an affidavit, may be treated as a judicial admission. United States v. One Heckler-Koch Rifle, 629 F.2d 1250, 1253 (7th Cir. 1980). See also Chow, 185 F. Supp. 2d at 916.

---

[2] It is worth emphasizing that plaintiffs' filing of the instant lawsuit does not support a cause of action for defamation. See Havoco v. Hollobow, 702 F.2d 643, 647 (7th Cir. 1982).

10

The judicial admissions to which Wilton refers were contained within Gallagher's motion to dismiss the Wilton Companies' first complaint. In his memorandum in support of his motion to dismiss, Gallagher made the following statements:

(1) "In any event, it is clear that Plaintiffs, themselves, never had a relationship, contractual or otherwise, with Gallagher or FEPC, and they have not even attempted to plead such a relationship."
(2) "[B]ecause Gallagher has never worked for or had any other business relationship with either of the Plaintiffs, why would he be allowed access to [plaintiffs' trade secrets]?"
(3) "The only relationship Gallagher ever had with any entity possibly associated with Jay Wilton, was Wilton Acquisitions Corp., which is not a party to this lawsuit."

As a starting point, it is worth emphasizing that none of the admissions made in Gallagher's motion to dismiss can reasonably be interpreted as disclaiming a relationship, contractual or otherwise, with Jay Wilton personally. To the contrary, those statements were all directed at the Wilton Companies (plaintiffs) or Wilton-related entities. Thus, on their face, those statements do not appear to preclude a breach of contract claim against Jay Wilton.

Perhaps anticipating this conclusion, Jay Wilton hones in on two particular allegations that he maintains contradict Gallagher's assertions that he had no relationship with any Wilton-related entities: (1) "Gallagher and Jay Wilton and the companies he controls orally agreed... to continue building CVS stores for so long as CVS would continue to utilize the services of Jay Wilton," and (2) Gallagher's efforts resulted in "CVS awarding Wilton Development service assignments, which resulted in Jay Wilton and Gallagher developing and closing on approximately 30 stores." Jay Wilton asks the court to "remove these [allegations] from consideration," since they are inconsistent with Gallagher's earlier denial of any sort of business relationship with the Wilton Companies or other Wilton-related entities.

11

Although cognizant of the apparent inconsistencies between some of the statements made in Gallagher's motion to dismiss and the two allegations highlighted by Jay Wilton, the court nonetheless concludes that Gallagher has stated a claim in Count III. In addition to the allegations quoted above, Gallagher further alleges in Count III that "upon information and belief, Jay Wilton received in excess of $6,000,000 on CVS development projects initiated, developed, and otherwise worked on by Gallagher pursuant to the CVS Agreement" and that "to date, Jay Wilton has failed to remit payment of any profits to Gallagher for his contribution to these deals and pursuant to the CVS Agreement." These latter allegations, when taken together with Gallagher's allegation that he entered into an oral contract with Jay Wilton, are sufficient to state a claim for breach of oral contract against Jay Wilton.

Although skeptical of what appears to be purposefully ambiguous pleading on Gallagher's part (throughout the amended counterclaim and third party complaint), the court nonetheless concludes that Gallagher has stated a claim for relief in Count III. Of course, it remains to be seen whether, with the benefit of discovery, Gallagher will be able to substantiate the allegations in Count III against Jay Wilton personally.

Jay Wilton's statute of frauds argument is also unavailing. The Illinois Statute of Frauds, 740 ILCS 80/1, directs that "[n]o action shall be brought... upon any agreement that is not to be performed within the space of one year from the making thereof, unless the promise or agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing...." Any agreement that is <u>capable</u> of being performed within a year, whether or not that contingency is likely, falls outside the reach of the statute of frauds. <u>Lamaster v. Chicago and Northeast Illinois District Council of Carpenters Apprentice and Trainee Program</u>, 766 F. Supp.

12

1497, 1507 (N.D.Ill. 1991) (citations omitted). Having said that, if the contingency frustrates the terms of the contract, rather than defining the terms of the contract, the contract will usually fall within the statute of frauds. Compare id. (promise to be employed for as long as employee wished fell outside statute of frauds because employee's desire to remain employed defined duration of contract) with Koch v. Illinois Power Co., 175 Ill. App. 3d 248 (3d Dist. 1988) (oral contract for permanent employment fell within of statute of frauds because contingencies such as death would have frustrated the terms of the contract).

The CVS agreement described in Count III of the amended counterclaim and third party complaint was "to continue building CVS stores for so long as CVS would continue to utilize the services of Jay Wilton." Since CVS could have rightfully stopped using Jay Wilton's services within one year of the formation of the agreement, thereby allowing for full performance within one year, the contract does not fall within the statute of frauds and thus would be enforceable. Cf. Decor Grates, Inc. v. Fararo, No. 92 C 6395, 1994 WL 532023, at *3 (N.D.Ill. Sept. 29, 1994) (agreement intended to last as long as either party wanted to be associated with the other could have been fully performed in one year and thus fell outside the statute of frauds).

4.   Count V: Unjust Enrichment (against Jay Wilton)

Jay Wilton argues that Count V (like Count III) should be dismissed based on Gallagher's previous denials of a business relationship with any Wilton-related entities. For the reasons discussed above, the court concludes that any such admissions do not bar a claim against Jay Wilton personally. His motion to dismiss Count V is therefore denied.[3]

---

[3]The fact that Gallagher may have received payment does not compel a contrary result, given that the identity of the alleged payor has not been disclosed to the court.

13

5. Count VI: Breach of Fiduciary Duty

Counter- and third party defendants have also moved to dismiss Count VI on the basis of the judicial admissions discussed above. As the court has noted repeatedly, however, Gallagher has never disclaimed a relationship with Jay Wilton. Accordingly, Count VI stands insofar as it is pled against Jay Wilton.

Other than referencing the judicial admissions outlined herein, Mayer has not otherwise challenged the adequacy of Gallagher's allegations in Count VI against him. Nonetheless, the court dismisses Count VI against Mayer sua sponte because, as Mayer points out with respect to Count VII (below), the oral contract which forms the basis of the allegations in Count VI was entered into by Jay Wilton, not Mayer, and Gallagher has not advanced any theory for piercing the corporate veil against Mayer. See Real Colors, Inc. v. Patel, 39 F. Supp. 2d 978, 992 (N.D.Ill. 1999) ("It is a well-established principle that a corporation is separate and distinct as a legal entity from its shareholders, directors and officers and, generally, from other corporations with which it may be affiliated.").

Further, Gallagher's previous denials of a business relationship with any Wilton-related entities bar the relief sought in Count VI against the Wilton Companies, as well. As noted above, at three different points in his motion to dismiss the Wilton Companies' complaint, Gallagher specifically and unequivocally disclaimed any relationship with the Wilton Companies. Taken together, these admissions are sufficient to bar the relief sought in Count VI as to the Wilton Companies. Cf. Ventre v. Datronic Rental Corp., No. 92 C 3289, 1996 WL 66115 (N.D.Ill. Feb. 13, 1996) (allegation in complaint that contradicted attorney's judicial admissions was not "well-pleaded" and thus the court declined to accept allegation as true for purposes of ruling on 12(b)(6) motion).

14

6. Count VII: Accounting

To state a claim for accounting under Illinois law, a plaintiff must allege the absence of an adequate remedy at law and one of the following: (1) breach of a fiduciary relationship between the parties; (2) a need for discovery; (3) fraud; or (4) the existence of complex mutual accounts. 3Com Corp. v. Electronics Recovery Spec., Inc., 104 F. Supp. 2d 932, 941 (N.D.Ill. 2000). Illinois courts will excuse the failure to allege the absence of an adequate remedy at law, however, if the accounting claim is based on a breach of fiduciary duty. Id.

Gallagher acknowledges that his accounting claim is based on breach of fiduciary duty. As noted earlier, the court is dismissing Gallagher's breach of fiduciary duty claim against the Wilton Companies. Accordingly, Count VII must be dismissed as to the Wilton Companies, since Gallagher has not alleged an alternative basis for his accounting claim.

The court also dismisses Count VII as to Scott Mayer. As Mayer points out, the counterclaim alleges no basis for why he should account for monies paid by CVS. Unlike Jay Wilton, Mayer is not alleged to have made any contracts or other agreements with Gallagher with respect to the CVS business. Moreover, Gallagher has not advanced any theory for piercing the corporate veil against Mayer. See Real Colors, Inc., 39 F. Supp. 2d at 992 (N.D.Ill. 1999) ("It is a well-established principle that a corporation is separate and distinct as a legal entity from its shareholders, directors and officers, and generally, from other corporations with which it may be affiliated."). Gallagher has not responded to this argument, which appears to be meritorious. Accordingly, the court grants Mayer's motion to dismiss Count VII against him.

## CONCLUSION

For the reasons stated herein, Counts VI and VII are dismissed as to the Wilton Companies and Scott Mayer, and Count IV is dismissed with leave to replead. The motions to dismiss Counts II, III, and V are denied in their entirety. Counter-plaintiffs are directed to file an amended counterclaim and third party complaint conforming to this opinion on or before December 29, 2003. Counter- and third party defendants shall respond thereto on or before January 19, 2004. The parties are directed to appear for a status report on January 21, 2004, at 9:00 a.m.

**ENTER:** **December 2, 2003**

Robert W. Gettleman
United States District Judge